William D. Hyslop
United States Attorney
Eastern District of Washington
Stephanie Van Marter
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | 4:19-CR-06063-SMJ-1 |
| Plaintiff, | United States' Response to Defendant's Motion to Revoke Detention |
| vs. | |
| MONICA PESINA, | |
| Defendant. | |

   Plaintiff, United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington, Stephanie Van Marter, Assistant United States Attorney for the Eastern District of Washington, submits the following Response to Defendant's Motion to Revoke Detention. (ECF No. 58).

//

//

//

United States' Response to Defendant's Motion to Revoke Detention – 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Introduction

On October 22, 2019, the Defendant was charged by way of criminal complaint charging her with Possession with the Intent to Distribute 50 grams or More of Actual Methamphetamine.  (ECF 1).  On November 7, 2019, the Defendant along with her Co-Defendant Nick CARTER, were Indicted on multiple counts, the Defendant named in Counts 1 and 2.  (ECF 11).  The Defendant made her initial appearance on November 8, 2019.  The United States filed a motion for Pre-Trial detention and the detention hearing was set for November 12, 2019 before Magistrate Judge Dimke. The initial Pre-Trial services Report was provide don November 8, 2019 and a supplement was prepared for the November 12, 2019 hearing.  (ECF 22, 37).  Defendant moved to continue the detention hearing and it was reset to November 18, 2019.

On November 18, 2019, the use of detention was argued.  At that hearing, the United States advised the Magistrate court of a series of criminal acts and encounters involving the Defendant and her Co-Defendant from June 2019 up until the time of their arrest in early November.  As was communicated to the Defendant and counsel, the United States intends on seeking an additional Indictment based upon this new criminal behavior[1].  However, defense counsel asked the United States to consider waiting until there could be an opportunity to determine if resolution was possible.

At the conclusion of the November 18, 2019 hearing, Magistrate Judge Dimke ordered the Defendant to be detained pending trial, finding that the United

---

[1] It is important to note the parties discussed this new Indictment and the United States agreed to hold off until preliminary discussion could begin as to potential resolution acknowledging that it would be included in any resolution as relevant conduct.  Thus, whether it is a formal Indictment or not, it is still relevant for consideration in any detention hearing and subsequent plea and sentence.

United States' Response to Defendant's Motion to Revoke Detention – 2

1    States showed by a preponderance of evidence that the Defendant presented a

2    flight risk and by clear and convincing evidence that the Defendant presented a

3    danger to the safety of the community.  (ECF No. 48).  The Magistrate Court

4    further made detailed findings,

Defendant is charged with possession with intent to distribute methamphetamine and heroin. The United States alleged that Defendant has been involved in a series of incidents with law enforcement beginning in June 2019, when she was stopped in a vehicle with her co-Defendant. The complaint alleges that a firearm was located on the co-Defendant and that $27,000 cash, a substantial amount of methamphetamine and heroin, and drug-trafficking related items including a digital scale and ziploc bags were located in the vehicle. Thereafter, it was proffered that law enforcement searched Defendant's home in September 2019 and located similar evidence of drug trafficking, including substantial amounts of methamphetamine, fentanyl-laced pills, heroin, and marijuana and multiple firearms. It was alleged that Defendant, knowing a warrant had been issued for her arrest, hid in a friend's residence in Dixie, Washington in an effort to evade law enforcement. During a November 2019 search of the Dixie residence, it was proffered that law enforcement located both Defendants, two firearms, a substantial amount of narcotics, a scale, cell phones, and other evidence indicative of drug trafficking. These allegations are serious; the quantity and nature of the drugs involved, coupled with the presence of firearms on three separate occasions, are indicative of danger to the community. In addition, Defendant's attempt to evade law enforcement and the lengthy term of imprisonment she would face if convicted on these charges heightens the risk of nonappearance.

The weight of the evidence is the least important factor, but appears to be sufficiently strong to raise a concern regarding danger to the community and risk of nonappearance based on the United States' proffer, which included details gathered from lengthy investigations and evidence resulting from the execution of search warrants.

Defendant is 40 years old and was born in Walla Walla, Washington. She has lived in this District her entire life and has resided in the Tri-Cities area for the past 12 years. She has ties to the community. Her mother resides in Walla Walla and one of her siblings resides in Spokane; she has limited contact with them. She has three children, ages 22, 11, and 9, who resided with her prior to her arrest. Before that, her children resided with her sporadically, at times residing with their aunt (including for a period of five years). Defendant does not have stable employment and reports being self-employed for the past five years. She was evicted from her apartment on November 14, 2019. Defendant struggles with substance abuse; she obtained an evaluation and intensive outpatient treatment was recommended. She expressed willingness to engage in treatment and plans to reside in clean and sober housing if granted release. While the Court agrees that substance abuse must be addressed, it finds that it cannot safely grant her release on this record. Defendant's criminal history involves similar controlled substance violations (two prior convictions) and the Court notes that she has stated to family members that she will always be a drug dealer. The recent allegations of Defendant's participation in substantial narcotics trafficking, involving firearms and fentanyl-laced pills, despite two law enforcement interventions, combined with Defendant's efforts to hide from law enforcement give this Court insufficient assurance that Defendant will abide by any conditions it sets to ensure the safety of the community or her appearance at court proceedings. On balance, the Court finds that the presumption of detention has not been rebutted.

20    *Id.*

22    //

23    //

24    //

25    //

26    //

27    //

United States' Response to Defendant's Motion to Revoke Detention – 3

For the reasons set forth herein, the United States submits that the Defendant is a demonstrated flight risk and a danger to the community. The Defendant has failed to present any new or additional information that was not otherwise considered by Magistrate Judge Dimke. Accordingly, the United States requests that this Court maintain the Magistrate Judge's Order and deny the Defendant's request for release.

## I. The Facts of the Instant Case

The Defendant has been charged in the Eastern District of Washington with Possession with the Intent to Distribute 50 Grams or More of Actual (Pure) Methamphetamine and Heroin. Due to the serious nature of the charges in the Indictment, the Defendant faces a mandatory minimum sentence of 10 years in prison and up to a statutory maximum of life. As also noted above, there is additional criminal conduct which is being pursued which would allege additional mandatory minimum drug offenses.

There are a series of events that occurred between the time of the Defendant first contact with law enforcement and the Defendant arrest that are relevant for this Court review of Magistrate Dimke's Order. The Defendant attempts to argue this conduct should not be considered because is outside the "offense charged pursuant to 18 U.S.C. § 3142(g)(1). The Defendant however wholly ignores the other provisions of the Bail Reform Act which includes the ability to present evidence as to the Defendant's overall risk to the community, risk of flight, seriousness of the offense and history and characteristics. *Id* at (e) and (f). Note of which are limited to the counts within the indictment. Thus, the following is the timeline of criminal activities presented to Judge Dimke are likewise important and relevant for this Court's review:

United States' Response to Defendant's Motion to Revoke Detention – 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- **INDICTMENT #1: (PESINA AND CARTER)**

On *June 4, 2019*- On June 4, 2019, Pasco Police Sgt. William Parramore initiated a traffic stop on a vehicle for a moving violation. The driver of the vehicle was identified by Washington driver's license as the Defendant.  There were two additional occupants in the vehicle, identified as Carter and Bobbie Roche (08/10/19XX).

Pasco Police Detective Andy Corral recognized the Defendant's name when it was checked over the police radio. Det. Corral was familiar with the Defendant based upon several prior drug related investigations when Det. Corral was a member of the METRO drug task force and the DEA drug task force. Det. Corral responded to the scene with his K9 Ezra. Det. Corral applied his K9 Ezra to the exterior vehicle.  K9 Ezra alerted for the presence of narcotics inside of the vehicle.

During the course of the traffic stop, and while officers were interacting with the occupants of the vehicle, Carter was found to be in possession of a loaded Hi-point 9mm handgun. Carter was also in possession of approximately one ounce of methamphetamine. Carter admitted to officers that he was a convicted felon and as such could not legally possess firearms.  Carter was arrested for Unlawful Possession of a Firearm and Possession of a Controlled Substance.

Det. Corral advised the Defendant of her Miranda Rights. The Defendant waived her rights and made a statement. The Defendant denied there were any controlled substances in the vehicle, despite the K9 alert. The Defendant would not answer when she was asked the question a second time. The Defendant and Roche were released from the scene. The vehicle was impounded pending the application for a state search warrant.

United States' Response to Defendant's Motion to Revoke Detention – 5

On June 5, 2019, Det. Corral secured a search warrant for the vehicle. Inside of the trunk, Pasco Police Officer Nathan Carlisle, located a red Eddie Bauer backpack. The backpack contained $26,950.00 in US currency, four bags of suspected methamphetamine, and a black tar like substance. The methamphetamine weighed approximately 371.85 grams (13.1 ounces) and the black tar substance weighed approximately 54.75 grams (1.9 ounces). Officer Carlisle also located a digital scale and several empty Ziploc baggies in the backpack. The substances were field tested and yielded a presumptive positive result for the presence of methamphetamine and heroin.

Additionally, items of dominion for Pesina were found in the same backpack as the narcotics. They included a Visa debit card, a Community Health Plan card, and a HAPO Community Credit Union Receipt. All of these items were in Pesina's name.

The firearm seized from CARTER was subsequently examined by SA Northcutt who concluded the firearm has been transported in interstate and foreign commerce.

-**POTENTIAL INDICTMENT #2**:

During the same time period (summer 2019), Spokane Special Investigations Unit (SIU) began an investigation after the Defendant and CARTER were identified as pound level methamphetamine distributors. During the course of that investigation, several addresses were identified as being utilized by the Defendant and CARTER: a house in Spokane located 4203 E. Wellesley Spokane WA and 1416 S. Thayer Dr., Richland WA. During this investigation, law enforcement engaged in two controlled buys of pound quantities of methamphetamine on each occasion from the Defendant and CARTER. It culminated in obtaining state search warrants for both residential locations on *September 27, 2019*.

United States' Response to Defendant's Motion to Revoke Detention – 6

During the execution of the search warrant at the Thayer address, law enforcement located and seized approximately 5 ounces of methamphetamine; 4 ounces of heroin, 15 Fake Oxy pills believed to contain Fentanyl, multiple firearms; 30 pounds of marijuana and indicia belonging to the Defendant and CARTER. The Defendant and CARTER were located in Richland that same day and arrested.  During the execution of the search warrant at the Wellesley address in Spokane, law enforcement located and seized indicia belonging to both the Defendant and CARTER and multiple cellular telephones.

During this investigation, Spokane SIU investigators learned of the above referenced traffic stop and began to de-conflict the dual investigations.  The Defendant and CARTER again bonded out from that state arrest.  It was also during this time period (late September 2019) the cases were collectively being brought to the attention of the assigned AUSA as they were both state investigations.

### -CARTER INDICTMENT #2

On *October 18, 2019*, TFO Brazeau, Northcutt and Laffey spoke with Spokane Police Department (SPD) Special Investigations Unit (SIU) Sergeant Zach Dahle, and learned SPD Patrol Officers had arrested Nick Carter on October 5, 2019, after bonding out on his previous arrests in Pasco and Spokane; again in possession of another firearm.  SA Northcutt received copies of the SPD reports for this incident and reviewed them.  The reports include the following information:

Patrol Officers Elijah Hayward, Tyler Heiman and Corrigan Mohondro are employed as police officers for the City of Spokane, WA. These officers were working on October 4, 2019 at 2336 hours, into the early morning hours of October 5, 2019 and were dispatched to the area Myrtle/ Rich in Spokane reference

a person with a weapon.  The 911 reporting party, hereafter referred to as Victim 1 called SPD to report six subjects were standing around his/her vehicle at the location. One person was hitting his/her vehicle with a bat. Victim 1 further reported that the individuals had pulled a gun and knife on her in the past. Victim 1 described two of the involved subjects as a white female in her 20's and a white male 20-40 years old with a "camouflage hoody and jeans."

According to Officer Hayward's report, as he drove into the area, he observed a white male wearing a black jacket and blue jeans walking eastbound on Wellesley from Myrtle at a fast pace. Officer Hayward reported that the subject appeared to be holding something in his left hand. Officer Hayward further reported that the male looked back at his marked SPD patrol vehicle and turned away. Based on the proximity to the original call, the hurried pace the male was walking at, the similar physical description to one of the involved males, and the fact that there were no other people walking in this location at this time of night, Officer Hayward believed this individual was likely involved in the person with a weapon call.

Officer Hayward illuminated the male with his spot lamp. The male looked back at Ofc. Hayward again and continued to walk away.  Ofc. Hayward saw the subject conceal an object in his left hand. Ofc. Hayward asked the male what was in his hand. The male replied, "nothing," and continued to walk. Ofc. Hayward then asked the male to stop and talk to him. Ofc. Hayward reported at that time, the male took off running east on Wellesley and then north on Florida. Ofc. Hayward reported he was still holding the object in his left hand.

Ofc. Hayward reported that as the subject ran north on Florida, he switched the object to his right hand and continued to run. Believing the subject had a weapon, Ofc. Hayward stayed a safe distance behind him and followed him in his patrol vehicle. Ofc. Hayward activated the full overhead light bar as he followed

United States' Response to Defendant's Motion to Revoke Detention – 8

the subject, waiting for other units to respond before he attempted to detain him. Ofc. Mohondro reported that he also responded to assist Ofc. Hayward in the pursuit of the male subject.

Officers Hayward reported that the male ran into a fenced driveway on the west side of Florida, north of Wellesley, and threw the object he was holding against the fence. Officer Hayward reported that the male then ran to the gate and threw a second object down on the ground. Officer Mohondro saw the male drop a black case in the weeds by the fence.  Officers Hayward and Mohondro reported that they gave the subject commands and he complied. He was detained in handcuffs. Officer Heiman reported that he was tasked with checking the area where the male threw the object against the fence and found a loaded Glock, model 23, .40 caliber pistol. He and Officer Mohondro checked the location where the male threw the other object and found a black pouch. Inside was a ziplock bag with a large quantity of a substance resembling methamphetamine and another ziplock bag with a substance resembling heroin. Ofc. Hayward positively identified the male as Nicholas Sean Carter-Sanford.

Sgt. Dahl examined the controlled substances, tested and weighed them and reported that there was a distribution quantity (approximately 2 ounces-later weighed 54.7 grams) of what tested positive for methamphetamine and a piece of heroin (later weighed 7.3 grams).  A search of Carter-Sanford's person, incident to his arrest, revealed three cellular phones (all powered on and appeared to be functional) and $644 cash.

SA Northcutt is familiar with Nicholas Carter from a prior ATF investigation which resulted in Carter pleading guilty to a violation of 18 USC 922(g)(1) Felon in Possession of a Firearm, in the United States District Court for the Eastern District of Washington.  Carter was sentenced in that case on June 3, 2010, and sentenced to 57 months incarceration in Federal prison.

United States' Response to Defendant's Motion to Revoke Detention – 9

Based upon the above continuous criminal activities of both the Defendant and CARTER, the United States Attorney's Office obtained criminal complaints and arrest warrants.  The warrants were entered into the system and also turned over to the United States Marshal's Service.  Between October 22, 2019 and the date of their arrest November 8, 2019, the Marshals and the law enforcement entities involved in the above investigation tried to locate the Defendant.  It was reported to law enforcement, that the Defendant and CARTER were aware warrants were coming and left the area to law low.

- **POTENTIAL INDICTMENT #3**

In early November 2019, SA Bach with Yakima ATF, who were at the time unaware of the investigations out of Richland and Spokane of the Defendant, came into contact with a confidential source who identified the Defendant and her "boyfriend", later confirmed to be CARTER, as distributing narcotics out of a residence in Dixie WA.  Upon running the Defendant's name, SA Back contacted FBI Safe Streets TFO Brazeau and SA Northcutt and learned of the other investigations.  That same day, SA Bach learned the USMS was actively looking for the Defendant and CARTER. SA Bach shared the information that ATF CI had provided. The USMS had already set up surveillance on the Dixie Target Address and observed CARTER in the front yard earlier during the day.

At approximately 1630 hours ***November 7, 2019***, law enforcement responded to the Target Address where CARTER was again observed in the front yard.  CARTER was observed working under a black pickup. CARTER was taken into custody without incident. USMS Deputy Marshal Bill Peary conducted a search incident to arrest and located suspected methamphetamine and suspected cocaine in CARTER's pants pocket. There was also a phone located underneath the vehicle.

United States' Response to Defendant's Motion to Revoke Detention – 10

The Defendant was then called out of the residence.  The Defendant did not initially comply but did exit the residence a short time later and was taken into custody without incident. There was no one else located inside the residence. Further, based upon items located inside the house, it is believed the Defendant was inside the living room when law enforcement contacted her.

SA Bach contacted the leaser of the Target Address, who advised he had left at approximately at noon on the day of the state search warrant. The leaser of the house advised that the Defendant and CARTER showed up at his house approximately four days earlier. He further stated the Defendant and CARTER stayed everywhere inside the house. Detective Mike Bump applied for and obtained a state search warrant for the residence based upon the aforementioned facts.  A state search warrant was granted and executed on the Target Address.

During a search of the spare bedroom, the following items were located: Glock, Model 26 GEN 4 9mm pistol, bearing serial number BBTU921, with loaded magazine; a Beretta, Model 92FS 9mm pistol, bearing serial number BER513205, with loaded magazine; (later determined to be stolen); $3850 in United States currency found in the side pouch of a blue and gray backpack which was sitting next to the clothes bin containing the two firearms; CARTER's insurance card, a prescription pill bottle with CARTER's name on it, and a hand written phone list found in the side pound of the blue and grey backpack.

During a search of the master bedroom, SPD Detective N. Lundgren located approximately 1.6 grams of suspected methamphetamine located in the closet on top of a dresser.  During a search of the extra space/ living room, the following items were located:  Approximately 5 grams of suspected methamphetamine (original packaged weight) found on the couch; a glass pint size jar with several shards of suspected methamphetamine was found in a yellow tool bag under the coffee; Visa credit card with PESINA's name on it was found on the top of the

United States' Response to Defendant's Motion to Revoke Detention – 11

coffee table; and three cellular phones. (The credit card was approximately three feet from three cell phones).

Below the coffee table was a shoe box.  The following items were found inside the shoe box: approximately 2.3 grams of suspected cocaine (original packaged weight), approximately 113 grams of suspected methamphetamine located in four separate bags (original packaged weight), approximately 101.4 grams of suspected heroin (original packaged weight), approximately 84 blue "M" "30" pills, suspected of containing fentanyl, electronic digital scale with white residue located on the top; plastic zip lock bags believed to be used for packaging material of  controlled substances and; various controlled substance smoking pipes.

After the Defendant's arrest, TFO Brazeau and FBI TFO BJ Moos with FBI Safe Streets Task Force in TriCities, WA, conducted a post Miranda interview with her.  During this interview, the Defendant admitted the methamphetamine located inside the residence belonged to her.  The Defendant also admitted to her involvement in drug distribution and ownership of the narcotics from the June traffic stop.

## II. <u>Jurisdiction of the Court to Review Detention</u>

Magistrate Judge Dimke's release Order regarding the Defendant is subject to review by this Court pursuant 18 U.S.C. §3145(b).  This Court has original jurisdiction over the offense charged in the Indictment and therefore the power to determine whether the Defendant has overcome the presumption of detention that applies in this case.  Specifically, 18 U.S.C. §3145(b) provides in relevant part:

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for

United States' Response to Defendant's Motion to Revoke Detention – 12

revocation or amendment of the order.  The motion shall
be determined promptly.

*18 U.S.C. § 3145(b)*.

### III.    Presumption of Detention - 18 U.S.C. § 3142(e)

The Bail Reform Act governs detention of a defendant pending trial and
provides that a person should be released pending trial unless the court "finds that
no condition or combination of conditions will reasonably assure the appearance of
the person as required and the safety of any other person and the community." *18
U.S.C. § 3142(e)*.  Where, as the grand jury found here, there is probable cause to
believe that the Defendant distributed and possessed 50 grams or more of actual
methamphetamine and heroin, there is a rebuttable presumption that "no condition
or combination of conditions will reasonably assure the appearance of the person
as required and the safety of the community." *18 U.S.C. § 3142(e)*.  Although the
presumption shifts the burden of production to the defendant, the burden of
persuasion remains with the government.  *See, e.g. United States v. Hir*, 517 F.3d
1081, 1086 (9th Cir. 2008).

It is important to note that "the presumption is not erased when a defendant
proffers evidence to rebut it; rather, the *presumption remains* in the case as an
evidentiary finding mitigating against release, to be weighed along with other
evidence relevant to factors listed in § 3142(g)." *Id.* (citing *United States v.
Dominguez*, 783 F.2d 702 (7th Cir. 1986) (involving drug trafficking)) (emphasis
added); *United States v. Mesher*, 707 F.Supp. 1224, 1225 (D. Or. 1989) (citing
*United States v. Palmer-Contreras*, 835 F.2d 15, 18 (1st Cir. 1987) (even if the
defendant offers some evidence in rebuttal, the presumption of flight does not
disappear, but rather "retains evidentiary weight—the amount depending on how
closely defendant's case resembles the congressional paradigm"); *United States v.*

United States' Response to Defendant's Motion to Revoke Detention – 13

*Martir*, 782 F.2d 1141, 1144-45 (2d Cir. 1986) (holding that even after a defendant charged with a drug crime rebuts the presumption, the court must continue to give the presumption weight in deciding whether the defendant should be detained pending trial).

The government retains the ultimate burden of persuasion on both issues. To detain the Defendant, the Court must be convinced either (1) by clear and convincing evidence that the defendant presents a danger to the community, or (2) by a preponderance of the evidence that he is a flight risk. *United States v. Mercedes*, 254 F2d. 433, 436 (2nd Cir. 2001).

Importantly, when it enacted the Bail Reform Act, Congress held hearings and concluded that defendants involved in drug trafficking posed a particular risk of flight. It found that drug traffickers often establish contacts in other countries which would allow them to flee with relative ease. Moreover, due to the lucrative nature of drug trafficking, Congress concluded that the forfeiture of a bond is simply the cost of doing business. *See generally* S. Rep. No 225, 98th Cong. 1st Sess. 20 (1983) *reprinted in* 1984 U.S. Code Cong. & Admin.News pp.23-24; *See also United States v. Jessup*, 757 F.2d 378, 380-385 (1st Cir. 1985).

## IV.    The United States Position on Appeal

*a. The Defendant has not overcome the Presumption of Detention*

The United States submits that the Defendant has not rebutted the presumption of dangerousness and risk of flight contained in 18 U.S.C. § 3142(e). The Defendant has not provided sufficient evidence that the Defendant is not a flight risk.

The Defendant has proffered a number of factors to try and rebut the presumption:

United States' Response to Defendant's Motion to Revoke Detention – 14

> Here, Defendant Pesina is not a flight risk because (1) she is a
> U.S. citizen and has lived in Walla Walla or the Tri-Cities her entire
> life, (2) she does not have a passport and has only travelled out of
> state on rare occasions, (3) her two minor children reside in
> Kennewick, Washington, (4) she does not have a history of failing
> to appear for Court, (5) she did not flee the jurisdiction after being
> detained following the June 2019 traffic stop, (6) she has no history
> of violence, (7) she has no history of firearm violations, (8) her
> release plan includes attending intensive outpatient substance
> abuse treatment, (9) her release plan includes residing in a clean
> and sober residential facility, (10) she has a valid driver's license,
> (11) she has an operational vehicle, and (12) her best friend is
> supportive and has been clean and sober for three years. Defense
> counsel is not alone in this determination—the most recent pretrial
> services report also recommends release on conditions. ECF No. 46

ECF 58 at page 5

However, as noted by the Magistrate Court, these factors do not overcome the fact that the Defendant despite law enforcement arrest and intervention, continued to engage in serious criminal behavior to include the possession of distribution quantities of multiple narcotics and the possession of multiple firearms. The Defendant was also in possession of distribution quantities of Fentanyl laced pills on multiple occasions, the most dangerous and deadly drug in our community.

It is also important to note that none of these additional facts were known and therefore, not considered by probation when the Pre-Trial Services Report was prepared. As Magistrate Judge Dimke noted, the Defendant's reliance on their recommendation for release is therefore misplaced as their recommendation was not based upon complete information.

United States' Response to Defendant's Motion to Revoke Detention – 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Moreover, a review of the Defendant's criminal history as well as information provided by the Defendant's family reflect a pattern and history of continuous involvement in drug distribution and drug abuse. (ECF 22 and 37). It is this same pattern that is also reflected in the Defendant's continuous behavior from June until the time of her arrest in November 2019. This pattern of continued serious criminal behavior, despite court and law enforcement intervention, makes her a danger to the community.

The Defendant seems to argue that because there was a delay between the state traffic stop in June and the criminal complaint in October, the United States must not have considered the Defendant a danger to the community since she remained in the community. To the contrary, as indicated, each of the contacts by law enforcement were separate state investigations. All the state investigations were immediately referred to the respective state prosecutor's offices for charges. It was not until the differing jurisdictions de-conflicted the matters did they learn of the full scope of the Defendant and CARTER's crime spree, for lack of a better term. When a Defendant engages in criminal activity across multiple jurisdictions, it is more difficult to put all the pieces together. Such is an aggravating factor and in no way leads to the conclusion the Government did not see the Defendant or CARTER as a danger. To the contrary, the facts before the Court more than establish the Defendant's danger to the public.

The Defendant is likewise a risk of flight. Aside from the fact that the Defendant has a history of failure to appear to include two failure to appears in a 2017 state matter (ECF 22), this is the first time the Defendant has faced mandatory minimum federal drug charges. When faced with the possibility of multiple drug related state arrest warrants, the Defendant left the area to include her children to "lay low." While "laying low", the Defendant continued to engage in drug trafficking and did so while in the possession of multiple firearms. The

United States' Response to Defendant's Motion to Revoke Detention – 16

Defendant was able to evade arrest for several weeks hiding out in a separate town. It is more than reasonable to conclude that her flight risk is far greater now facing mandatory minim federal offenses given these facts.

The Defendant's proffered release plan, which is not specific in terms of residence, treatment or other special conditions, is simply inadequate to address these concerns and does not overcome the presumption.

Assuming *arguendo* that the Defendant has met their burden of production, the United States has produced sufficient evidence that supports continued detention of the Defendant pursuant to 18 U.S.C. § 3142.

b. *18 U.S.C. § 3142(g) Factors Support Detention*

Even if the Court finds the Defendant has overcome the presumption of detention, the United States respectfully submits that the factors outlined in 18 U.S.C. § 3142(g) still weigh in favor of the Defendant's detention. As the Ninth Circuit has noted, the presumption of detention remains an "evidentiary finding mitigating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *See e.g., Hir*, 517 F.3d at 1086.

1) *Nature and Circumstances of Offense*

First, as outline above, the nature and circumstances of the offense charged are exceptionally serious. This factor favors detention.

//
//
//
//
//
//

United States' Response to Defendant's Motion to Revoke Detention – 17

2)    *Weight of the Evidence*

The weight of the evidence against Defendant is strong. In each law enforcement investigation, search warrants were obtained leading to the seizure of substantial quantities of various narcotics and firearms.   The Defendant also provided a post Miranda statement admitting to her continuous involvement in drug distribution.  While case law dictates that this prong is the "least important" factor, the Court must "consider the evidence in terms of the likelihood that [Defendant] will pose a danger" as well as whether the evidence is strong and the penalties sufficient to cause the Defendant to flee.  *Hir*, 517 F.3d at 1090.  This factor favors detention.

3)    *Nature and Seriousness of Danger to the Community*

The nature and seriousness of danger to the community that would be posed by Defendant's release also supports detention.  As noted above, the Defendant continued to engage in serious criminal behavior even after law enforcement intervention. On each occasion, substantial quantities of narcotics and firearms were seized from the Defendant.  Yet, after bonding out on those state arrests, the Defendant was able to re-engage and obtain even more quantities of narcotics to include deadly Fentanyl laced pills.   Given the circumstances surrounding the offenses, it is clear that the Defendant poses a risk to the community.

The Defendant has offered no evidence to indicate that she will not continue to engage in drug dealing if released on bail pending trial. Nor has she demonstrated that the conditions of release she proposes will prevent her from doing so. The Defendant will undoubtedly promise the Court he will not engage in further drug dealing; however, "this promise to comply with the law is insufficient to defeat the presumption of danger to the community."  *Christie*, 2010 WL 2900371 *4 (citing *Rueben*, 974 F.2d at 587); *see also United States v. Salerno*, 481 U.S. 739 (1987) (detention may be ordered where the court finds no condition

United States' Response to Defendant's Motion to Revoke Detention – 18

or combination of conditions could prevent the defendant's continued or future criminal activity); *United States v. Tortora*, 922 F.2d 880, 886 (1st Cir.1990) (observing that release conditions contained "an Achilles' heel ... [where] virtually all of them hinge on the defendant's good faith compliance"). This factor also supports detention.

### 4)    Characteristics of the Defendant

The particulars of the Defendant's character, financial resources, past conduct, criminal history, and warrant history, weigh heavily in favor of detention. A clear indicator of a defendant's risk of flight is that individual's history of non-appearance before this Court and other courts. The Defendant has a history of non-appearance and has also had a prior fugitive warrant issued for her arrest. More significantly are the facts as noted above in regard to her fleeing the area to evade arrest.

The United States also maintains significant concerns as the information provided by the Defendant' family as to her recidivist activities. This is consistent with the information derived from this investigation as well as others as to the Defendant's longstanding involvement with drug distribution. The Defendant proposes to release to a clean and sober house and to begin substance abuse treatment. There is however no updated information or any details of this plan or any information as to whether the previous Oxford house and treatment facility are even still available to the Defendant. The clean and sober house is not a secure location nor is outpatient treatment. It is then largely dependent upon the Defendant to remain at those locations and avail herself of those resources. There is simply no indication in this record that the Defendant will do so.

The United States understands the Defendant has children and that may be a motivating factor. However, their presence historically has not been sufficient to overcome the Defendant's criminal behavior. It is also appears the Defendant's

United States' Response to Defendant's Motion to Revoke Detention – 19

children have routinely been given over to others in order to allow the Defendant the ability to engage in this conduct.  Likewise, having a friend in the community who also has recent criminal history and is a prior drug user, does not provide sufficient stability to overcome the Defendant's aforementioned history and characteristics.

Respectfully, given this record, all factors weigh in favor of the Defendant's pre-trial detention in this matter.

## V.    Even Strict Release Conditions are Not Sufficient

As the Ninth Circuit took time to point out, any release conditions contain "an Achilles' heel ... virtually all of them hinge on the defendant's good faith compliance."  *Hir*, 517 F.3d at 1092 (internal citations omitted).  The Ninth Circuit also noted that release conditions "can be too easily circumvented or manipulated." *Id.*  The effectiveness of the release conditions in this case depend entirely on the good faith compliance of the Defendant.  The history and characteristics of the Defendant suggest that compliance will not follow no matter the release conditions imposed.

## VI.    Conclusion

Pursuant to 21 U.S.C. § 3142(e), the Defendant is presumed a flight risk and a danger to the community.  The totality of the facts of this case substantiate this

//
//
//
//
//

United States' Response to Defendant's Motion to Revoke Detention – 20

presumption.  Accordingly, the United States requests the Court maintain the Magistrate Judge's Order on Detention and deny the Defendant's request for release.

Dated:  December 20, 2019.

William D. Hyslop
United States Attorney


*s/ Stephanie Van Marter*
Stephanie Van Marter
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Adam R. Pechtel
Pechtel Law PLLC
21 N Cascade St
Kennewick, WA 99336
Email: adam@pechtellaw.com

*s/ Stephanie Van Marter*
Stephanie Van Marter
Assistant United States Attorney

United States' Response to Defendant's Motion to Revoke Detention – 22